IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JASON KELLY FRAZIER                                                                                    PLAINTIFF

        v.                           Civil No. 6:11-cv-06054

SGT. WOMBLE, Ouachita River
Correctional Unit (ORCU);
OFFICER JESSE STEARNS, ORCU;
OFFICER PHILLIPS, ORCU; and
OFFICER HATHCOCK, ORCU                                                                         DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. The Plaintiff proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2013), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation

Defendants have filed a motion for summary judgment (ECF No. 30). Plaintiff filed a response (ECF No. 33). The motion is ready for decision.

**1. Background**

Plaintiff is currently incarcerated in the Hawkins Unit for Males, of the Arkansas Department of Correction (ADC), in Wrightsville, Arkansas. During the events at issue in this case, he was incarcerated in the Ouachita River Correctional Unit (ORCU) of the ADC, located in Malvern, Arkansas. Defendant Womble was employed at the ORCU as a sergeant. The remaining Defendants served as correctional officers at the ORCU.

Beginning in 2006, and covering his incarceration at several ADC units, Plaintiff asserts he

-1-

was initially involved in the gang called the Aryan Circle, withdrew, and then served as a "snitch." On February 13, 2011, while housed in the Cummins Unit, Plaintiff was involved in an altercation with inmates affiliated with the Aryan Circle.

On March 10, 2011, Plaintiff was transferred to the ORCU from the Cummins Unit. According to Plaintiff, immediately upon his transfer he requested protective custody out of fear for his life. He alleges he made this request to Officer Stearns, Officer Phillips, and Officer Hathcock. He was informed that Officer Stearns would advise Sergeant Womble of the situation. Plaintiff was told Sergeant Womble was the individual in charge of the matter.

Plaintiff was in isolation barracks initially at the ORCU to serve out the remainder of a punitive isolation term imposed for rule infractions while he was at the Cummins Unit. On or about March 18th, Plaintiff maintains he sent three requests for protective custody--one to Sergeant Womble; one to Warden Hipple; and one to classification. He asserts that he received no responses to his requests.

On March 25th, Plaintiff was moved to general population. Later that day, he was involved in an altercation with three other inmates. After he was seen in the infirmary, Plaintiff was placed back in isolation.

Plaintiff submitted an emergency unit level grievance on March 26th. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) C at pg. 1. He stated his life was in "severe danger" and asked to be moved to protective custody. *Id.* at pg. 1. He indicate he had asked for protective custody on numerous occasions. *Id.*

On March 30th, he was advised that his request for protective custody was going to be granted as soon as he signed the necessary paperwork. *Defts' Ex.* C at pg. 1. On March 31st, this

grievance was assigned number OR-11-00209.  *Id.*  There was no appeal.  *Id.*

On March 28th, Plaintiff submitted another unit level grievance.  *Defts' Ex.* C at pg. 2.  In it, Plaintiff complained that Sergeant Womble stated that he was not aware of any requests made by the Plaintiff to move to protective custody prior to the March 25th altercation.  *Id.*  This grievance was assigned number OR-11-00210.  Sergeant Womble responded that he had never received any paperwork stating Plaintiff wanted protective custody prior to the March 25th altercation.  *Id.*  This decision was not appealed.  *Id.*

On March 29th, Plaintiff filed a unit level grievance.  *Defendants' Ex.* B at pg. 1.  Although the copies provided to the Court are difficult to read, it appears Plaintiff was complaining that Defendants Womble and King attempted to make him sign a protective custody agreement that did not follow ADC policy.  It was received by a grievance officer on March 30th and assigned grievance number OR-11-00201.

On April 20th, the warden found the grievance to be without merit as the agreement was standard protocol for an inmate transfer to the protective custody unit at the ORCU.  *Defts' Ex.* B at pg. 2.  The grievance was also found to be moot as Plaintiff had been transferred to a Maximum Security Unit.  *Id.*

Plaintiff appealed the decision.  *Defts' Ex.* B at pg. 2.  The Deputy Director upheld the warden's decision on April 29th.  *Id.* at pg. 3.  Plaintiff filed this lawsuit on May 11th.  ECF No. 2.

On March 30th, Plaintiff submitted a grievance.  *Defts' Ex.* C at pg. 3.  Plaintiff indicated the request was an emergency one and that his life was in danger.  *Id.*  He stated he had requested protective custody and explained in great detail the problems he had at his prior unit with the Aryan Circle.  *Id.*  The grievance was received by a grievance officer on March 31st and assigned number

OR-11-00211. Sergeant Womble replied that he hadn't received any paperwork from the Plaintiff requesting protective custody. *Id.* Sergeant Womble stated that he only knew that Plaintiff was affiliated with the Aryan Circle and did not know anything further about Plaintiff's history. *Id.* No appeal was taken.

On April 20th, Plaintiff submitted a step two formal grievance. *Defts' Ex.* C at pg. 4. The grievance was not marked received by a grievance officer until June 21st.[1] *Id.* At that time, it was assigned grievance number OR-11-00465. *Id.* In the grievance, Plaintiff summarized his history with the Aryan Circle and his fear that he would be attacked. *Id.* at pgs. 4-6. He also states that when he arrived at the ORCU he notified the east wing isolation officer of his situation. *Id.* at pg. 4.

On July 15th, the warden noted that Plaintiff had been transferred to the East Arkansas Regional Unit protective custody on April 19th. *Defts' Ex.* C at pg. 7. The grievance was found to be without merit. *Id.* No further appeal was made. *Id.*

The ADC has a grievance procedure for the resolution of inmate complaints. *Defts' Ex.* A. The procedure is contained in Administrative Directive 10-32 and requires inmates to fully exhaust administrative remedies prior to filing a civil lawsuit. *Id.*

The first step in the grievance procedure is the filing of an informal resolution within fifteen days of the incident. *Defts' Ex.* A at pg. 5. At this stage, the inmate is to write a brief statement, in the space provided, summarizing the complaint and including the date, place, personnel involved or witnesses, and how the incident affected the inmate. *Id.* Only one issue or problem is to be addressed in a grievance. *Id.*

---

[1] The bottom of the grievance form contains a stamped date of June 9th, Ouachita River Unit, Warden's Office. *Defts' Ex.* C at pg. 4.

If the issue is not resolved, the inmate proceeds to step two which is the formal grievance procedure. *Defts' Ex.* A at pg. 8.  Step two is resubmitted on the same form and the inmate is to state why the informal resolution was unsuccessful. *Id.*  No new issues may be raised. *Id.*  At this stage a grievance number is assigned and the date the grievance was received by the grievance officer is logged. *Id.* at pg. 9.  A written response is to be made from the warden or center supervisor within twenty working days of receipt. *Id.* at pg. 10.

If the inmate is not satisfied, an appeal may be taken within five working days to the chief deputy, the deputy, or the assistant director. *Defts' Ex.* A at pg. 11.  A response to the appeal is to be made in writing within thirty working days unless there has been an extension of time. *Id.* at pg. 12.

The policy advises inmates that they "must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit and Claims Commission claim." *Defts' Ex.* A at pg. 18.  Failure to exhaust may result in inmates "lawsuits or claims" being "dismissed immediately." *Id.*

### 2.  Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th

Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3.  Discussion

Defendants maintain they are entitled to summary judgment because the Plaintiff did not fully exhaust his administrative remedies prior to filing this lawsuit.  Of the five relevant grievances, Defendants point out that Plaintiff did not appeal four of them, OR-11-00209, OR-11-00210, OR-11-00211, and OR-11-00465.  Plaintiff has fully exhausted as to one grievance, OR-11-00201.

Even if dismissal is not mandatory, Defendants argue that Plaintiff did not name Defendants Stearns, Phillips, or Hathcock in the grievance.  Further, they contend the only issue raised in the grievance OR-00-00201 was whether Sergeant Womble and Officer King[2] tried to have Plaintiff sign protective custody paperwork that did not conform to ADC policy.  Thus, the only issue Plaintiff may pursue a failure to follow policy claim which Defendants maintain is not cognizable under § 1983.

In opposition, Plaintiff notes that his problems with the Aryan Circle began before he was transferred to the ORCU.  He states he began requesting protective custody out of fear for his life when he was first transferred to the unit and addressed the issue both verbally and in multiple requests and grievances.  Further, he states his appeals, grievances, and requests were mishandled

---

[2] Officer King is not a named Defendant.

by the officers since his transfer. In fact, he believes some officers deliberately lost his paperwork.

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to clam, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* "[F]ailure to exhaust available administrative remedies is an affirmative defense, not a matter of subject matter jurisdiction." *Lenz v. Wade*, 490 F.3d 991, 993 n. 2 (8th Cir. 2007).

The Supreme Court in *Booth v. Churner*, 532 U.S. 731, 738-39 (2001) held that "exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought." *Walker v. Maschner*, 270 F.3d 573, 577 (8th Cir. 2001). The exhaustion requirement applies to "all inmate suits about prison life." *Porter*, 534 U.S. at 532. This is true whether the claims "involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Id.*

In *Williams v. Norris*, 176 F.3d 1089, 1090 (8th Cir. 1999), the Court held that a claim could

proceed because it was exhausted at the time the Court ruled. In *Johnson v. Jones*, 340 F.3d 624 (8th Cir. 2003), the Court was faced with this issue and concluded that in light of the Supreme Court holdings in *Booth* and *Porter,* the holding in *Williams* was "no longer tenable." *Johnson*, 340 F.3d at 627. It stated that:

> [u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court. Thus, in considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred. If exhaustion was not completed at the time of filing, dismissal is mandatory.

*Id.*

To exhaust his administrative remedies under the applicable ADC policy, Plaintiff had to: submit a step one informal resolution; a step two formal grievance; and a grievance appeal regarding the claims at issue prior to filing this lawsuit. While Plaintiff states he verbally requested protective custody and submitted inmate requests[3] prior to the attack and the filing of this lawsuit, nothing in the summary judgment record suggests he fully exhausted the **grievance procedure** prior to the filing of this lawsuit. There is no indication that the grievance procedure was unavailable to him.

He did not exhaust the grievance procedure prior to filing this lawsuit with respect to any claim except the claim that Sergeant Womble did not follow proper procedures with respect to his request for protective custody. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)(no constitutional interest in having state officers follow state law); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)(prison officials' failure to process inmates' grievances, without more, is not actionable under section 1983; grievance procedure is procedural right only, and does not confer any

---

[3] Plaintiff has submitted as exhibits several inmate request forms that he completed after the March 25th attack. *See e.g., Plff's Exs. V & X.* The inmate request form is a different form than that utilized for grievances. *Id.* The form states that it "should be used before completing an Informal Resolution or Grievance." *Id.*

substantive right on inmate).

Given the mandatory nature of the exhaustion requirement, the Court is required to dismiss the case. In this instance, the result is a tremendous waste of both judicial resources and the parties' time and effort and has resulted in the needless expenditures.

Defendants asserted failure to exhaust as an affirmative defense in their answer (ECF No. 21 at pg. 2). While they filed a motion to dismiss raising a different issue, they chose, for whatever reason, not to assert the affirmative defense in the motion. Instead, they chose to wait until the parties had conducted discovery to raise the issue in their summary judgment motion.

### 4. Conclusion

For the reasons stated, I recommend that the Defendants' motion for summary judgment (ECF No. 30) be granted and the case dismissed without prejudice with respect to Plaintiff's failure to protect claims. The motion should be granted with prejudice with respect to the claim that Sergeant Womble failed to properly follow the ADC procedures. Defendants' counsel should be admonished to raise the exhaustion issue at the outset of the case.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 16th day of August 2013.

        /s/ Barry A. Bryant
        HON. BARRY A. BRYANT
        UNITED STATES MAGISTRATE JUDGE